## Case No. 7,878.

### KNEVALS v. HYDE.

[See 6 Fed. 651.]

---

## Case No. 7,879.

KNICKERBOCKER INS. CO. v. COMSTOCK.

[9 N. B. R. 484;[1] 6 Chi. Leg. News 142.]

Circuit Court, N. D. Illinois. 1874.

BANKRUPTCY — FRAUDULENT PREFERENCES — RETURN OF INSURANCE PREMIUMS—WHETHER PAYMENT BY PRESIDENT IS PAYMENT BY COMPANY.

1. Where the policies in an insurance company are terminated, the insured do not become creditors of the company for the unearned premium so that payment to them of such premiums constituted a preference as will support a petition for an adjudication of bankruptcy.

2. The jury should have been instructed that they must be satisfied from the evidence that the payment of these unearned premiums were acts of the company; and, further, an instruction should have been given excluding the contingency that the president made the payments under the idea that the parties, as policy holders, and the company, as underwriters, had the legal right to pay and receive the trifling sums named in this case.

3. There was not sufficient evidence to justify the verdict of adjudication.

---

[1] [Reprinted from 9 N. B. R. 484, by permission.]

In error to district court of the United States for the Northern district of Illinois. In bankruptcy.

Story & Swift, for appellants.

DRUMMOND, Circuit Judge. This was a petition originally filed January 5th, 1872, by Gardner P. Comstock, asking for an adjudication of bankruptcy against the company. The acts of bankruptcy alleged were, "a payment of money to Charles A. Sperry and to J. R. Gore, in order to give them a preference. March 28th, 1872, James Braley and Lauriston Patterson filed a supplemental petition, alleging similar acts of bankruptcy. On the 18th of June, 1872, John H. Allen and B. Palmer Mackey filed a supplemental petition, charging the same acts of bankruptcy. All the petitioners averred the insolvency of the company, and that it was indebted to them for loss on policies of insurance. There were also in the petitions allegations of acts of bankruptcy, set forth somewhat vaguely, but which need not be further referred to, as the case turned on the payments made to Sperry and Gore. The company denied the acts of bankruptcy and there was a trial by jury, verdict and adjudication of bankruptcy, in the district court. On the day of trial Comstock and Braley and Patterson appeared and agreed with the company to continue the case, but Allen and Mackey insisted on a trial, and the court decided that the latter had a right to try the case, though the other petitioners did not further appear, either by themselves or their attorneys. Allen and Mackey offered evidence tending to show that they had a policy issued to them by the company, and that they sustained and had proved a loss under it; and the court held that whether or not Allen and Mackey were creditors of the defendant was a question for the court and not for the jury, and that they had the right to proceed under the other petitions. This was under objections and exception by the defendant. There was proof showing that the company was insolvent. There was also evidence tending to prove that the president of the company said that he had canceled the policies of Gore and Sperry, and had returned to them unearned premiums to the amounts respectively of three dollars and ten dollars; that Sperry was a friend of his who had lost everything in the fire, and he did not know how to refuse him. There were allegations in the petitions of fraudulent concealment of property, but the evidence as to this was withdrawn.

The only evidence, then, of acts of bankruptcy finally submitted to the jury was the payments made to Gore and Sperry, referred to by the president. There was no connection of the company proved with these payments, except what might be inferred from the fact that the president said he made them. All of the policies of the company

contained a clause that the insurance might be terminated at the request of the assured, and at the option of the company, on certain conditions; one of which was, in the last mentioned cause, a refunding of a ratable proportion of the premium for the unexpired term of the policy. The principle assumed by the petitioners before the district court, and apparently conceded, was, that in case of a termination of the policies by Gore and Sperry, they became creditors of the company for the unearned premiums. and that' a payment constituted a preference. We think this point was put too strong against the defendant, even if we admit the general view of the court was correct as to the return of unearned premiums. The jury should have been instructed that they must be satisfied from the evidence that these payments were acts of the company; and further, an instruction should have been given, excluding the contingency that the president made the payments under the idea that the parties, as policy holders, and the company, as underwriter, had the legal right to pay and receive the trifling sums named. It may have been that the president made the payments under the conviction that it was his imperative duty so to do, irrespective entirely, and without thinking or intending any preference whatever. It seems to me, therefore, that an instruction, which was asked to that effect, ought to have been given; and, indeed, if it were proper to look at the whole case upon the question of acts of bankruptcy, there does not seem to have been sufficient evidence to justify the verdict or the adjudication.

[In the appeal of a case forming part of the same general litigation. Mr. Justice Clifford delivered the opinion of the supreme court upon the question of appeals in bankruptcy from the district to the circuit courts. See 16 Wall. (83 U. S.) 258.]